677 A.2d 335

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Keith D. BANKS, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 1996.

Filed May 22, 1996.

556

Jeffrey W. Stover, State College, for appellant.

Robert B. Stewart, III, District Attorney, Huntingdon, for Commonwealth, appellee.

Before POPOVICH, SAYLOR and EAKIN, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Huntingdon County on February 21, 1995, following appellant's conviction on charges of

murder in the second degree,[1] robbery,[2] aggravated assault [3] and conspiracy.[4] Herein, appellant contends that a new trial is warranted for the following reasons: 1) During closing argument, the prosecutor improperly labelled appellant a "killer," referred to appellant's post-arrest silence, and made numerous statements of personal opinion; 2) The lower court erred in granting the Commonwealth's challenges for cause as to potential jurors Imperoli and DiFrancesco; 3) The lower court erred in refusing to charge the jury on involuntary manslaughter; 4) The lower court erred in permitting Nathaniel Fortson to testify in regard to appellant's purchase of the murder weapon; and 5) The lower court erred in refusing to charge the jury on "special scrutiny" in regard to the testimony of Nathaniel Fortson. We affirm.

The relevant facts in this case are as follows: On February 1, 1994, appellant, Winston Branche, Keith Fortson, Bill Loner, Andre Epps and an undetermined individual planned a robbery. The men planned to rob Charles Brumfield and Aaron Ford. The men believed that Brumfield and Ford were drug dealers from Chambersburg, Pennsylvania, who were selling illegal narcotics in Mount Union Borough, Huntingdon County. While planning the robbery, it was decided that appellant, Fortson and Branche would go to the Elks Club in Mount Union Borough under the guise of wanting to purchase narcotics. It was further decided that the others would attempt to lure Brumfield and Ford to the Elks Club under the ruse of a potential sale.

On that same day, appellant, Fortson and Branche went to the Elks Club and awaited the arrival of Brumfield and Ford. After waiting some time for the arrival of the victims and the rest of the group, the men became impatient and went in search of the victims. After being unable to find them, they returned to the Elks Club.

1. 18 Pa.C.S.A. § 2502(b).
2. 18 Pa.C.S.A. § 3701(a)(1)(i).
3. 18 Pa.C.S.A. § 2702(a)(1).
4. 18 Pa.C.S.A. § 903.

At approximately 5:00 p.m., the victims arrived at the Elks Club of their own accord. The men, including appellant, approached the victims who had remained inside of their automobile. After some discussion as to the price of the narcotics, appellant pulled out a gun, cocked it, pointed it at the victims and said, "Give me all your shit." Ford, who was sitting in the driver's seat, attempted to drive away from the scene. Appellant shot into the automobile twice. The first bullet injured Ford's shoulder and then entered Brumfield's chest. The second bullet entered the automobile and became embedded in the front passenger's seat, missing both victims.

After being shot, Ford drove directly to the Mount Union Police Department and reported the shooting to the police. Both victims were transported to the J.C. Blair Hospital in Huntingdon County. While Ford recovered from his gunshot wound, Brumfield died from his wound shortly after his arrival at the hospital.

Following the shooting, appellant and his co-conspirators were arrested by the police. Following a jury trial, appellant was found guilty on the charges of murder in the second degree, robbery, aggravated assault and criminal conspiracy. He was sentenced on February 21, 1995, to life imprisonment. Appellant filed post-verdict motions which were denied by the lower court. This appeal followed.

Appellant's first argument is that the prosecutor made numerous improper and prejudicial remarks during his closing argument to the jury. The law pertaining to closing argument is well-settled in this Commonwealth.

[Generally,] [a] prosecutor's remarks during closing argument will seldom mandate a new trial. 'Even where the language of a prosecutor is intemperate, uncalled for and improper, a new trial is not required unless its unavoidable effect would be to prejudice the jury, forming in their minds, fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.'

*Commonwealth v. Ritter*, 419 Pa.Super. 430, 615 A.2d 442, 451 (1992), *appeal denied*, 535 Pa. 656, 634 A.2d 220 (1993) (citations omitted). "In making such a judgment, we must not lose sight of the fact that the trial is an adversary proceeding. . . ." *Commonwealth v. Rainey*, 540 Pa. 220, 656 A.2d 1326, 1334 (1995) (citation omitted). A prosecutor must have latitude to advocate the Commonwealth's cause. *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300 (1987). That latitude includes the right to argue all fair deductions from the evidence with a certain degree of "oratorical flair." *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988). "A prosecutor's remarks fall within the ambit of fair comment if they are supported by evidence and they contain inferences which are reasonably derived from that evidence." *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101, 1109 (1988). Furthermore, the "prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred." *D'Amato*, 526 A.2d at 309 (citation omitted). "A criminal conviction is not to be . . . overturned [lightly] on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *Id.*, 526 A.2d at 310.

■ Appellant argues that the following remarks, which were made by the prosecutor during closing argument, deprived him of a fair trial:

> This trial is about Keith Banks shooting Aaron Ford and about Keith Banks killing Charles Brumfield and being liable for the death of Charles Brumfield on two different theories. But this trial is about robbery, it's about murder, and it's about greed. Keith Bank's greed for drugs and money and what he was willing to do. *He was willing to rob. He was willing to kill.*

N.T. 9/28/95 p. 80 (emphasis added).

> Let's see what there is no dispute about. Aaron Ford was shot and Charles Brumfield was killed February 1, 1994. No dispute about that. They got to the police station just a little bit after 5:00 p.m. There is no dispute about that. And Aaron Ford said to Officer Haines, he did not know the

name of the guy that shot him at 5:00 p.m. All he knew was that he was very big. Well you look at this defendant sitting there at that table. Is he very big? Yes, he certainly is. He is so big that his green coat has a tag in it XXL. That is his coat. That is not Keith Fortson's coat. That is his coat. He is a big guy. He is so big he wears a double XXL coat. *That's the guy that shot Aaron Ford and Charles Brumfield.*

N.T. 9/28/95 p. 84 (emphasis added).

Keith Banks is the one who said I can't go anywhere in Branche's apartment. And he is the one who told Keith Fortson, who said he wanted to see his baby before he went to jail. This defendant was involved in a crime as a principal or as an accomplice so he is guilty of second degree murder. *He was the trigger man.*

N.T. 9/28/95 p. 104 (emphasis added).

But Keith Banks has done what the evidence from this witness stand shows he has done, shows you that he is a dangerous man. Puts his own wants and his own needs above all other. He got other people involved in this crime. *And he broke two of our oldest laws. Not to steal and not to kill.* This trial has been about protecting his rights. He has had a fair trial. Everybody here has seen to that. *But as Keith Banks sits there, he is a killer.* The evidence proves that out.

N.T. 9/28/95 pp. 106–107 (emphasis added).

█ Here, the nature of the statements and the context in which they were made convince us that appellant was not prejudiced. The prosecutor's remarks were supported by the evidence, contained inferences which were reasonably drawn from the evidence and were not so prejudicial as to make it impossible for the jury to render a true and proper verdict. The record reveals that three eye witnesses to the shooting testified that appellant was the individual who shot Brumfield and Ford. We note that it is proper for the prosecutor to argue that the evidence proves that the defendant is guilty of the charges in the indictment. *Rainey, supra.* Moreover, appellant's claims of "prosecutorial misconduct ignore the fact

that we have found far more graphic comments to be appropriate on several prior occasions." *Rainey,* 656 A.2d at 1335. *See, e.g., Commonwealth v. Sam,* 535 Pa. 350, 635 A.2d 603 (1993) (appropriate to argue that murder was "chilling" and that appellant "blew that little girl's brains out" and "wiped out three generations of people"); *Commonwealth v. Marshall,* 534 Pa. 488, 633 A.2d 1100 (1993) ("close the eyes of the dead"); *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367 (1991) (argument that victim was "carved up like a cheap piece of tenderloin," and that defendants had "ice water running through their veins"); *Commonwealth v. Upchurch,* 355 Pa.Super. 425, 513 A.2d 995 (1986) (referring to defendant as an "executioner" not prejudicial). In light of these precedents, appellant's claims provide no basis for relief.

■ Appellant's next claim of prosecutorial misconduct is that the prosecutor improperly commented on his post-arrest silence. Specifically, appellant claims that the following comment made by the prosecutor during closing argument was impermissible:

This is an example of what is called direct and circumstantial evidence. When I left the courtroom for lunch on Tuesday, I saw it snowing. That's direct evidence that it was snowing. But if you come into this courtroom and this room has no windows and the ground is dry had you come in and later when you come out there is snow on the ground and the people are shoveling, scraping, salting, the cars have their lights on and wipers on, that is circumstantial evidence that it snowed while you were here.

And circumstantial evidence consists of facts which point to the existence of other facts. Those first facts are combined with sound thinking and common sense. You use circumstantial evidence every day in your lives. And to us it's a tremendous help in criminal cases, especially when the crime is committed in secret or *when the criminal does not admit his guilt.*

N.T. 9/28/95 p. 94.

■ While appellant is correct in asserting that the Commonwealth is precluded from asking the jury to draw an

adverse inference from a defendant's post-arrest silence, his reliance thereon is misplaced in this case. *See Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716 (1992). Here, viewing the prosecutor's comment in the context in which it occurred, it is clear that the prosecutor was not commenting on appellant's alleged post-arrest silence. Rather, the purpose of the prosecutor's comment was to explain the concept of circumstantial evidence to the jury. From the prosecutor's comment, the jury could have inferred that circumstantial evidence is helpful in determining whether an accused, who has not admitted guilt, has committed a crime. Clearly, prior to the prosecutor's comment, the jury was well aware that appellant had not admitted that he was guilty in this case. Moreover, we note that the record reveals that the jury was informed that in fact appellant was not silent after he was arrested. Two police officers testified at trial that following appellant's arrest he stated that he was at the scene of the robbery but that he was not the shooter. Also, in his closing argument, defense counsel referred to statements made by appellant to police following his arrest. Accordingly, we cannot conclude that the jury here could have inferred from the prosecutor's comment that appellant had invoked his right to remain silent and that an adverse inference could be drawn therefrom.

 Appellant's final assertion of prosecutorial misconduct is that the prosecutor's closing argument was replete with improper personal references, and that the cumulative effect of these references was highly prejudicial. Specifically, appellant argues that it was improper for the prosecutor to preface his arguments with the words "I argue." "While it may have been more prudent for the prosecutor to refrain from using the first person, we emphasize that not every intemperate remark requires a new trial." *Commonwealth v. Hill,* 378 Pa.Super. 562, 549 A.2d 199, 204 (1988) (citation omitted). Reversible error exists only where the cumulative effect of any improper remark so prejudices the jury as to prevent a fair trial. *Hill, supra.* Here, we find that the prosecutor's use of the words "I argue" in his closing state-

ment were not expressions of personal belief. Rather, the remarks were merely meant to urge the jury to make a fair inference from the facts adduced during the trial. *See Commonwealth v. Martin,* 273 Pa.Super. 88, 416 A.2d 1102 (1979).

Appellant further argues that throughout the prosecutor's closing argument, he repeatedly made personal opinions regarding the credibility of witnesses. Specifically, appellant alleges that it was improper for the prosecutor to state the following: 1) "Aaron Ford told you the truth about two essential points, that he got shot and who shot him;" 2) "Trooper Schrock's testimony is credible;" 3) "[Witness Ripple] . . . stammered and stuttered his way through it, but he told the truth." After a careful review of the record, we find that appellant failed to object to these statements made by the prosecutor. Accordingly, appellant has waived any error as to these statements on appeal.[5]

Appellant's next contention is that the lower court erred in granting the Commonwealth's challenges for cause as to potential jurors Imperoli and DiFrancesco. We disagree. The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanors. It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct and answers to

---

**5.** Post-sentencing motions are now optional under the amended Rules of Criminal Procedure; they are no longer necessary to preserve an issue for appellate review. *Commonwealth v. Garcia,* 443 Pa.Super. 414, 661 A.2d 1388, 1392 n. 9 (1995). Since the determination of guilt in this case occurred on or after January 1, 1994, the new rules are applicable to this case. *Id.* However, under the amended Rules, a timely objection at trial is still required in order to preserve the issue for appellate review. *Id.*

questions. The decision on whether to disqualify is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion. *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811, 818 (1985) (citations omitted).

 Appellant first argues that the lower court improperly disqualified potential juror Imperoli. The record reveals that Imperoli testified as follows under voir dire questioning by the Commonwealth:

Q: Miss Imperoli, when we were in court, you were asked a question about whether or not you could give a fair trial both to the Commonwealth and this defendant, and you were asked if you had any reservations about that to stand up. And I recall that you did stand up.

A: Yes, I did.

Q: Can you explain, ma'am, what your problem would be?

A: Yes. I teach at Mount Union Elementary School, and I remember Keith when he was a student at that school. I had his brother in my classroom. I just don't know if I would be able to find him guilty. I really have reservations. I would like to be fair to your side also. I feel I don't know if I could be impartial. I certainly would try to be. But in the back of my mind I don't know if I would still think of him as a child I knew.

Q: Do you therefore have doubts regardless of what the evidence would be that you could be a fair and impartial juror to both sides?

A: Yes.

Q: That would be true regardless of what evidence you heard?

A: Probably not regardless of the evidence, but I mean I say one thing, but in my subconscious I don't know.

N.T. 9/28/95 pp. 1–2. From this exchange, we find that the lower court did not abuse its discretion in determining that Imperoli would not have been an impartial juror. We note that where, as here, a potential juror indicates that she cannot be an impartial juror, it is the lower court's function to assess

the credibility and demeanor of the potential juror. *Commonwealth v. Impellizzeri*, 443 Pa.Super. 296, 661 A.2d 422 (1995). In its opinion, the lower court indicates that Imperoli "made it clear that by her appearance that she did not wish to be a juror in this case. To be blunt, Mrs. Imperoli was noticeably uncomfortable, a condition we're certain ... emanated from her acquaintanceship with Keith Banks." Lower Court Opinion pp. 28. We will not reverse this finding on appeal.

█ Appellant's next argument is that the lower court improperly disqualified potential juror DiFrancesco. This juror was excused by the lower court because the defense counsel had represented her within the last five years. The record indicates that DiFrancesco had been a witness to a robbery approximately five years ago and that defense counsel had represented her in that matter. Since it was the lower court's blanket policy to excuse all potential jurors who had been represented within the last five years by any attorney involved in the case, the lower court granted the Commonwealth's challenge for cause.[6] We find that this was error.

█ It is well-established that "[a] remote relationship to an involved party is not a basis for disqualification where a prospective juror indicates during voir dire that he or she will not be prejudiced." *Commonwealth v. Berrigan*, 369 Pa.Super. 145, 535 A.2d 91, 98 (1987) (citation omitted). This concept is illustrated by a number of cases. One of these is *Commonwealth v. Phillips*, 398 Pa.Super. 58, 580 A.2d 840 (1990). In *Phillips*, we held that it was proper for a lower

6. During voir dire, the lower court judge disclosed the following: "I have made it a practice—and I'm going to say it for the record—that I have not—in the past I have not permitted jurors to sit who have been represented by any of the attorneys in the case within five years, and I'm going to stick to that." N.T. 9/28/95 p. 8. We find that such a policy by the lower court is improper. Like all of the courts of common pleas in this Commonwealth, Huntingdon County is a part of a state-wide court system consisting of unified rules and procedures. As precedent clearly dictates, decisions as to potential jurors are to be determined on a case by case basis utilizing the standards as set forth in this opinion and elsewhere. It is error for the lower court to decide in advance to disqualify all potential jurors who have been represented by any of the attorneys in the case within the last five years without first examining the relationship on a case by case basis.

court to refuse to disqualify a potential juror, a retired police officer, who knew the assistant district attorney trying the case. Because the juror testified that he would be a fair and impartial juror, we held that he was properly not excused for cause.

In *Berrigan, supra*, we held that it was proper for the lower court to refuse to disqualify a juror who testified that he would be an impartial juror, even though he had a low opinion of defense counsel.

Here, DiFrancesco unequivocally testified that the fact that she had been represented previously by defense counsel would not influence her ability to be fair and impartial. Yet, she was still disqualified by the lower court on the basis that she had been represented by defense counsel within the last five years. We find that based on prior case law, the relationship between DiFrancesco and defense counsel was not such a close relationship that prejudice should have been presumed. Accordingly, in light of the fact that the juror displayed no likelihood of prejudice by her conduct or answers to questions, it was error for the lower court to grant the Commonwealth's challenge for cause. *See Colson, supra.*

Having concluded that the grant of the challenge for cause was error, we must now determine whether it is necessary to award a new trial. Appellant argues that because the lower court improperly granted the Commonwealth's challenge for cause as to DiFrancesco, the Commonwealth was given an advantage over him by affording it an extra peremptory challenge. However, the record reveals that the Commonwealth did not exhaust all of its peremptory challenges. Therefore, assuming *arguendo* that the Commonwealth would have used one of its peremptory challenges to excuse DiFrancesco, the Commonwealth would still have had peremptory challenges remaining upon the conclusion of voir dire. Accordingly, we find that the trial court's abuse of its discretion in excusing juror DiFrancesco without cause is harmless error and does not warrant the granting of a new trial.

Appellant's next contention is that the trial court erred in refusing to charge the jury on involuntary manslaughter. The jury in this case did receive instructions on first degree murder, second degree murder and third degree murder. Defense counsel requested a jury instruction on involuntary manslaughter but the lower court denied it.

■ Since our supreme court's decisions in *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980), and *Commonwealth v. Williams*, 490 Pa. 187, 415 A.2d 403 (1980), it has been settled that "in a murder prosecution, an involuntary manslaughter charge shall be given only when requested, where the offense has been made an issue in the case and the trial evidence reasonably would support such a verdict." [7] *Commonwealth v. Long*, 397 Pa.Super. 140, 579 A.2d 970, 971 (1990) (citations omitted). Appellant contends that the evidence offered at trial would have supported a verdict for involuntary manslaughter. We disagree.

■ Viewing the evidence in a light most favorable to appellant, the record discloses the following: At some point on February 1, 1994, during the discussion between appellant and the victims seated in their automobile, appellant pulled out a gun, pointed it in the face of Ford and told him to give him the money and drugs. Instead of relinquishing the requested items, Ford stomped on the automobile's gas pedal in an attempt to flee. Eyewitness testimony established that appellant then fired two shots in the automobile.

"Under 18 Pa.C.S. § 2504(a), involuntary manslaughter requires evidence that the killing resulted from the 'doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner.'" *McCloskey*, 656 A.2d at 1374 (citation omitted). Appellant argues that in this case, the jury could have inferred that the gun was accidentally fired by appellant, that is, the

7. In determining the quantum of evidence necessary to "support a verdict," and the source from which it should be derived, we are required to view the evidence in the light most favorable to the defendant. *Commonwealth v. McCloskey*, 441 Pa.Super. 116, 656 A.2d 1369, 1372 n. 1 (1995) (citations omitted).

victim's automobile bumped appellant's hand which caused the gun to be fired. We agree with the lower court's conclusion that there was absolutely no testimony from any source that the victim's automobile had bumped anyone's hand or had came into contact with anyone's body. Also, there was no testimony that the weapon was fired accidentally. In fact, at trial, appellant's defense was that one of his co-defendants had shot the victims, not that the shooting was accidental. Further, appellant's argument that the first bullet was shot when his hand was bumped by the victim's automobile discounts the testimony of eyewitnesses that a second shot was fired after the automobile had pulled away. The firing of a second shot strengthens our decision that the jury could not have inferred that the shooting was merely reckless or grossly negligent. Accordingly, the lower court did not err in refusing to instruct the jury on involuntary manslaughter.

Appellant's next contention is that the lower court erred in permitting Nathaniel Fortson to testify as to an alleged prior bad act by appellant. Specifically, appellant argues that the lower court erred in permitting Fortson to testify that he saw appellant purchase the murder weapon in exchange for cocaine. We disagree.

"Unquestionably, the admission or exclusion of evidence is within the sound discretion of the trial court, and the admission of such evidence is justified so long as the need for the evidence outweighs the potential prejudice." *Commonwealth v. Bracey*, 541 Pa. 322, 662 A.2d 1062, 1069 (1995) (citations omitted). Our supreme court recently addressed the admissibility of other crime evidence in *Bracey* as follows:

> The often-stated rule in Pennsylvania governing the evidence of other crimes is that such evidence is not admissible solely to show a defendant's bad character or propensity for continuing criminal acts. However, not all references which may indicate prior criminal acts warrant reversal. Mere passing references to prior criminal activity will not require reversal unless the record illustrates definitively that prejudice resulted from the record. In addition, it is also well-established that evidence of other crimes may be admitted

where there is a legitimate evidentiary purpose for such evidence.

*Id.,* 662 A.2d at 1069 (citations omitted). "[S]uch evidence is generally admissible where it tends to establish motive, intent, absence of mistake or accident, commission of the crime, [identity of the person charged with commission of the crime,] or where it was part of a chain or sequence of events which formed the history of the case." *Commonwealth v. Williams,* 541 Pa. 85, 660 A.2d 1316, 1321 (1995) (citations omitted). *See Commonwealth v. Ragan,* 538 Pa. 2, 645 A.2d 811 (1994).

 Appellant claims that the challenged evidence does not fall within any of the exceptions to the general rule concerning the admissibility of other crimes evidence. Appellant further claims that even if the evidence does fall within one of the exceptions, its prejudice outweighed its probative value. We disagree.

As discussed previously, appellant's defense at trial was that one of his co-defendants had shot the victims, and that he was not the "trigger man." Fortson's testimony that he witnessed appellant purchase the murder weapon was relevant in establishing that appellant was in fact the owner of the murder weapon and that he was the shooter. It was logical for the lower court to conclude that Fortson's testimony establishing that appellant purchased the weapon would naturally tend to show that appellant was the person who had used the weapon to commit the crime.

We further note that evidence of appellant purchasing the murder weapon was part of the chain or sequence of events which became part of the history of this case and formed part of the natural development of the facts. *See Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491 (1988). Appellant's purchase of the murder weapon was the one event from which numerous other events flowed. For example, in addition to the testimony of Fortson that appellant purchased the murder weapon, the Commonwealth introduced the testimony of Mr. Ripple, who testified that on the day of the murder he saw appellant with a gun protruding from his pants pocket. Rip-

ple's description of the gun in appellant's pants pocket was similar to Fortson's description of the gun which he saw appellant purchase. The Commonwealth also presented witnesses who testified that appellant used this same gun to shoot the victims, and that a fisherman had found the gun in the Juniata River shortly after the incident at issue. Accordingly, we find that the lower court did not abuse its discretion in permitting Fortson to testify that appellant had purchased the murder weapon in exchange for cocaine.

■ Appellant's final contention is that the lower court erred in refusing to charge the jury on "special scrutiny" in regard to the testimony of Fortson. Specifically, appellant argues that the jury should have been instructed that Fortson had "struck a bargain" with the Commonwealth and offered to testify against appellant in exchange for early release from jail. Appellant requested that the lower court utilize 4.06 of the Pennsylvania Standard Criminal Jury Instructions. That suggested charge provides as follows:

4.06 (Crim) CERTAIN TESTIMONY SUBJECT TO SPECIAL SCRUTINY

You should examine closely and carefully and receive with caution the testimony of (____) (any witness) if you find that he (was previously hypnotized) (admitted that he committed perjury at another trial) (____).

Appellant argues that no other "corrupt and polluted source charge" was applicable to Fortson's situation, and, thus, the lower court should have "filled in the blanks" of Section 4.06 as desired by appellant. Appellant further argues that the lower court's failure to do so was an abuse of its discretion. We do not agree. Our review of the charges given by the lower court reveals a complete and explicit explanation dealing with the credibility of witnesses. The lower court charged the jury on the credibility of accomplices, the credibility of prior inconsistent statements and the credibility of witnesses with prior convictions. The court also gave a general charge on the biases of witnesses and the "False in one, false in all" rule. Accordingly, we find that the lower court did not abuse its

discretion in refusing to give appellant's specific requested charge.

For all of the aforementioned reasons, we affirm the lower court's judgment of sentence.

Affirmed.