J-A24043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RODNEY HANTON, | |
| Appellant | No. 341 EDA 2014 |

Appeal from the Judgment of Sentence February 4, 2014
in the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0000080-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 22, 2014**

Appellant, Rodney Hanton, appeals from the judgment of sentence imposed after his jury conviction of possession of a controlled substance. We affirm.

The trial court aptly set forth the background of this case, as follows:

On December 9, 2012, at approximately 3:00 a.m., Trooper Brian Richardson of the Pennsylvania State police was on patrol in full uniform in a marked State Police unit traveling southbound on Interstate 95 in . . . Delaware County, Pennsylvania. Trooper Richardson began following a silver Lincoln MKT station wagon . . . . . Trooper Richardson clocked the vehicle traveling 80 miles per hour in a properly posted 55 mile per hour zone. The vehicle was followed for 1.0 miles and the speed was clocked for over 0.3 miles . . . . After following the vehicle for 1 mile, Trooper Richardson pulled the vehicle over for speeding. Trooper

---

[*] Retired Senior Judge assigned to the Superior Court.

Richardson approached the vehicle to request the driver provide identification and registration information.

While approaching the vehicle Trooper Richardson smelled a strong odor of what he recognized through his training and experience as Phencyclidine or PCP. Trooper Richardson also smelled an air freshener which he believed was being used as a masking agent. [Appellant] was the driver and sole occupant of the vehicle. He also noticed [Appellant] was very nervous and his hands shook as he handed the Trooper his rental agreement [for the vehicle] and license. . . . [Appellant] told Trooper Richardson that he was on his way to Chester and that he had rented the vehicle. . . . Trooper Richardson utilized his patrol vehicle's computer and conducted a CLEAN/NCIC query on [Appellant] which revealed that he had an extensive Pennsylvania and FBI criminal history. [Appellant's] criminal history contained an arrest for drug trafficking and firearms possession charges. Trooper Richardson asked [Appellant] about his criminal charges then told [him] he was free to leave. [Appellant] turned and walked back to his car. As [Appellant] got to his car, Trooper Richardson called his name and [Appellant] stopped and walked back toward Trooper Richardson. Trooper Richardson approached [Appellant] and asked him for consent to search the vehicle.

[Appellant] agreed and signed the Pennsylvania State Police Waiver of Rights and Consent to Search form. Trooper Richardson then asked [Appellant] if he was responsible for everything in the car and [Appellant] answered he was. Trooper Richardson conducted a hand search of [Appellant's] vehicle and located a clear glass jar containing a yellow liquid suspected to be [PCP,] which had a gross weight of approximately 2 ounces including packaging in the center console. . . . Trooper Richardson seized the suspected [PCP] and approached the front of his patrol vehicle where [Appellant] was waiting. Trooper Richardson asked [Appellant] what was in the vial and he stated it was "wet". "Wet" is a street name commonly used for [PCP]. [Appellant] was taken into custody. A search incident to arrest was conducted on [Appellant] and $288 of US Currency was seized from his person.

(Trial Court Opinion, 4/08/14, at 1-2).

- 2 -

On June 10, 2013, Appellant filed a motion to suppress the evidence seized by Trooper Richardson. On August 8, 2013, the trial court denied the motion after a hearing. On October 22, 2013, the court held jury selection. Appellant moved to remove juror number seventeen for cause on the basis that he would be more likely to believe the testimony of a police officer. After the court questioned the juror about whether he could "render a fair and impartial decision," (N.T. Trial, 10/22/13, at 61-62), the court denied Appellant's motion.

The case proceeded to trial at which the Commonwealth presented three witnesses. During the Commonwealth's case, it moved for an offer of proof on Appellant's proposed witnesses, Darrell McMurray, who had managed an Enterprise Rent-A-Car in the past, and Jonathan King, who had, on one occasion, rented a car and accidentally left his firearm inside it. (*See* N.T. Trial, 10/23/13, at 99-100). The Commonwealth objected to the witnesses on the basis that their testimony was speculative, irrelevant, and more prejudicial than probative. (*See id.* at 101). The court sustained the Commonwealth's objection on the basis that the proposed testimony could not "offer anything probative in this case," (*id.* at 104), and Appellant did not testify or present any witnesses on his behalf. (*See id.* at 102-104; 140).

On October 23, 2013, the jury convicted Appellant of possession of a controlled substance. On February 4, 2014, the court sentenced Appellant

with the benefit of a pre-sentence investigative report (PSI) to a term of incarceration of not less than twelve nor more than twenty-four months. The court denied Appellant's motion for reconsideration. Appellant timely appealed.[1]

Appellant raises three questions for this Court's review:

I. Did not the trial court err in denying [Appellant's] Motion to Suppress Evidence, in that there was neither reasonable suspicion, nor probable cause for the State Trooper to summon [Appellant] back to the police cruiser after his paperwork was returned to him and he was told that he was free to leave, and thus was not the consent to search [Appellant] eventually gave involuntary?

II. Did not the trial court err in denying a challenge for cause to Juror No. 17, who repeatedly conceded that he would be more likely to believe the testimony of a police officer than that of a civilian and who deliberated with the Jury?

III. Did not the trial court err in excluding [Appellant's] entire defense, which consisted of a rental car manager, as well as a frequent rental car customer, both of whom would have testified that objects are frequently left in rental cars and are not discovered by the rental company's cleaning crew?

(Appellant's Brief, at 4).

In Appellant's first issue, he argues that "[a]ssuming *arguendo* that there was a valid reason for the initial stop, the grounds for that stop dissipated at the point when the trooper returned [Appellant's] driver's

---

[1] Pursuant to the court's order, Appellant filed a timely Rule 1925(b) statement of errors on February 14, 2014; and the trial court filed a Rule 1925(a) opinion on April 8, 2014 in which it relied in part on its August 8, 2013 opinion. **See** Pa.R.A.P. 1925.

license and rental agreement and told him he was free to leave." (***Id.*** at 10). Therefore, Appellant claims that "the investigative detention which ensued was also not supported by reasonable suspicion [and] [t]he motion to suppress physical evidence should have been granted." (***Id.***). We disagree.

Our standard of review of a challenge to a court's ruling on a suppression motion is well-settled:

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> In addition, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony. The suppression court is also entitled to believe all, part or none of the evidence presented. Finally, . . . the Commonwealth has the burden of establish[ing] by a preponderance of the evidence that the evidence was properly obtained.

***Commonwealth v. Galendez***, 27 A.3d 1042, 1045-46 (Pa. Super. 2011) (*en banc*), *appeal denied*, 40 A.3d 120 (Pa. 2012) (citations and quotation marks omitted).

Here, the trial court found that:

Immediately upon arriving at the vehicle, Trooper Richardson smelled the strong odor of [PCP]. [Therefore, he] had reasonable suspicion independent of the basis for the traffic stop to conduct the investigative detention that followed.

. . . Under the totality of the circumstances, [the c]ourt finds [Appellant's] consent was the product of his free and unconstrained choice, not the result of duress or coercion, express or implied[.]

(Trial Court Opinion, 8/08/13, at 7). We agree with the trial court.

Interactions with police are classified as mere encounters, investigative detentions, or formal arrests.

Police may engage in a mere encounter absent any suspicion of criminal activity, and the citizen is not required to stop or to respond. If the police action becomes too intrusive, a mere encounter may escalate into an investigatory stop or a seizure. If the interaction rises to the level of an investigative detention, the police must possess reasonable suspicion that criminal activity is afoot, and the citizen is subjected to a stop and a period of detention. Probable cause must support a custodial interrogation or an arrest.

*Commonwealth v. Thompson*, 93 A.3d 478, 484-85 (Pa. Super. 2014)

(citation omitted).

In [*Commonwealth v.*] *Strickler*[, 757 A.2d 884 (Pa. 2000)], our Supreme Court set forth a number of factors to assist in determining whether the interaction between a defendant and a police officer following the conclusion of a valid traffic stop is a mere encounter or an investigative detention:

(1) the presence or absence of police excesses; (2) whether there was physical contact; (3) whether police directed the citizen's movements; (4) police demeanor and manner of expression; (5) the location and time of the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention,

including its degree of coerciveness; (8) the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless . . . thus suggesting to a citizen that his movements may remain subject to police restraint, . . . and (9) whether there was an express admonition to the effect that the citizen-subject is free to depart, which is a potent, objective factor.

*Commonwealth v. Caban*, 60 A.3d 120, 127 (Pa. Super. 2012), *appeal denied*, 79 A.3d 1097 (Pa. 2013) (citations and some quotation marks omitted).

In *Caban*, a state trooper cited the driver for speeding, returned her license and paperwork, and told her that she was free to leave. *See id.* at 124. When the driver began walking back to her car, the officer asked her if she would answer a few more questions, which she did, before then saying she was ready to go. *See id.* The officer told her to "hold tight" while he questioned the passenger. This Court found that the trooper was justified in telling the defendant to "hold tight" because "[t]he facts adduced by Trooper Jones by the time he told [the driver] to 'hold tight' provided him with sufficient reasonable suspicion to justify the investigative detention." *Id.* at 128. This Court found that:

The car was owned by a third party not present in the vehicle, [the driver] acted nervously, the answers provided by [the driver] and Caban to basic questions regarding their destination were inconsistent, and various masking agents, including air fresheners, canisters of perfume, and a bottle of Fabreze [sic], were present in the vehicle. When considering the totality of the circumstances, we need not limit our inquiry to only those facts that clearly and unmistakably indicate criminal conduct.

- 7 -

> Instead, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Id.* at 129 (citations and quotation marks omitted).

Likewise, here, we conclude that, although the original purpose of the traffic stop for speeding concluded when Trooper Richardson gave Appellant his license back and told him he was free to leave, he had developed reasonable suspicion to believe Appellant was engaged in illegal activity to provide him with reasonable suspicion to support a further investigative detention.

For example, based on his prior training and experience, Trooper Richardson detected the smell of PCP and "a strong, overwhelming odor of air freshener, which [he referred] to as a masking agent" emanating from Appellant's rental vehicle. (N.T. Suppression Hearing, 6/28/13, at 9; *see id.* at 10). Upon conducting an NCIC and a criminal history check on Appellant, the trooper learned that he had a criminal record that included a federal conviction for possession with intent to deliver a controlled substance and a Firearm Act Violation. (*See id.* at 11). The trooper advised Appellant that he would give him a warning for the speeding violation, but "engaged him in conversation as to his origination, destination, [and] the purpose of his trip." (*Id.* at 12). In response, Appellant told Trooper Richardson that he was heading to an exit off of the interstate that the trooper knew does not exist, and Appellant did not know the exact address to which he was driving. (*Id.*

at 13). The trooper then advised Appellant that he was free to leave, but asked him to consent to a search of the vehicle. (*See id.* at 15-16). Appellant signed a State Police Waiver of Rights and Consent to Search Form. (*See id.*).

Based on the foregoing, we conclude that the record supports the trial court's finding that, under the totality of the circumstances, Trooper Richardson "possess[ed a] reasonable suspicion that criminal activity [was] afoot" to support an investigative detention. *Thompson*, *supra* at 485; *see also Caban*, *supra* at 127; *Galendez*, *supra* at 1045-46. Accordingly, Appellant's first issue does not merit relief.[2]

---

[2] Moreover, Appellant's reliance on *Commonwealth v. Moyer*, 954 A.2d 659 (Pa. Super. 2008), *appeal denied*, 966 A.2d 571 (Pa. 2009), *Commonwealth v. Dales*, 820 A.2d 807 (Pa. Super. 2003), and *Commonwealth v. Reppert*, 814 A.2d 1196 (Pa. Super. 2002) is not legally persuasive. (*See* Appellant's Brief, at 11-13). Although all three cases involved a traffic stop and a subsequent investigative detention, they are factually distinguishable.

For example, in *Moyer*, the police did not acquire any additional facts during the traffic stop to establish the reasonable suspicion required for additional questioning and an investigative detention. *See Moyer*, *supra* at 670. Likewise, in *Reppert*, this Court concluded that there was no reasonable suspicion to justify an investigative detention because the trooper did not acquire additional information beyond that necessary for the traffic stop. *See Reppert*, *supra* at 1204-05. Finally, in *Dales*, the officer smelled the odors of bactine and air freshener during a traffic stop, and failed to make a connection between those smells and the transportation of illegal drugs, thus failing to establish reasonable suspicion. *See Dales*, *supra* at 815. Therefore, these cases are factually distinguishable from the case before us.

In his second issue, Appellant argues that "[t]he trial court erred in denying a challenge for cause to Juror No. 17, who repeatedly conceded that he would be more likely to believe the testimony of a police officer than that of a civilian. . . ." (Appellant's Brief, at 13). Appellant's claim lacks merit.

> The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanors. It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct and answers to questions. The decision on whether to disqualify is within the sound discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion.

*Commonwealth v. Banks*, 677 A.2d 335, 341 (Pa. Super. 1996), *appeal denied*, 693 A.2d 585 (Pa. 1997) (citation omitted).

Further,

> Jurors should be disqualified for cause when they do not have the ability or willingness to eliminate the influences under which they are operating and therefore cannot render a verdict according to the evidence. . . . Where a prospective juror indicates that he or she cannot be an impartial juror, much depends upon the answers and demeanor of the potential juror as observed by the trial judge. Individuals are not expected to be free from all prejudices in order to sit on a jury and the burden here is on appellant to establish that the challenged jurors possessed a fixed, unalterable opinion that prevented [them] from rendering a verdict based solely on the evidence and the law.

*Commonwealth v. Impellizzeri*, 661 A.2d 422, 427 (Pa. Super. 1995), *appeal denied*, 673 A.2d 332 (Pa. 1996) (citations and quotation marks omitted).

Here, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion to dismiss Juror No. 17 for cause. The record reflects that the following occurred during *voir dire*:

> [APPELLANT'S COUNSEL]: You indicated, sir, that you'd be more likely to believe the testimony of a police officer.
>
> JUROR #17: It's my upbringing. I'm old school. It's just my upbringing, that's all, but I think I could be fair overall.
>
> [APPELLANT'S COUNSEL]: Okay. You think that would impede you though, you might lean toward the Commonwealth if you believe police officers more than civilians?
>
> JUROR #17: I would listen very carefully to the case.
>
> [APPELLANT'S COUNSEL]: I appreciate that.
>
> JUROR #17: And I still might lean toward the officer because I consider police officers as veterans, brothers and sisters.
>
> [APPELLANT'S COUNSEL]: Yeah.
>
> JUROR #17: I would lean towards the officer a little more, but I would have an open mind.
>
> [APPELLANT'S COUNSEL]: I appreciate it, but nevertheless you'd lean toward the police in terms of their testimony?
>
> JUROR #17: To be honest, just a little.
>
> [APPELLANT'S COUNSEL]: Okay.
>
> JUROR #17: Just a little.

[APPELLANT'S COUNSEL]: And you'd be instructed not—you know all this.

JUROR #17: Oh, yes.

[APPELLANT'S COUNSEL]: You're going to be told you can't do that.

JUROR #17: Yes.

[APPELLANT'S COUNSEL]: But that's the way you feel.

JUROR #17: I would be—I was here years ago for a case and I think I was very fair. I'd use fairness first.

* * *

THE COURT: So you could put that aside, your feeling and listen to all the testimony equally . . .

JUROR #17: Yes.

THE COURT: . . . and render a fair and impartial decision?

JUROR #17: Yes, I can, Your Honor.

THE COURT: Okay.

JUROR #17: I did that before.

* * *

THE COURT: He's okay.

[APPELLANT'S COUNSEL]: A Motion for Cause, Your Honor[.]

THE COURT: No, he's all right.

[APPELLANT'S COUNSEL]: He made it clear that he still would have the bias notwithstanding . . .

THE COURT: Well, he made it clear that he would put it aside and render a fair and impartial decision. . . .

(N.T. Trial, 10/22/13, at 60-64).

Based on the foregoing testimony, we conclude that Appellant has not met his burden of proving that Juror No. 17 "possessed a fixed, unalterable opinion that prevented [him] from rendering a verdict based solely on the evidence and the law." **Impellizzeri**, **supra** at 427. Although Juror No. 17 admitted that he had a bias in favor of police officers, the record supports the court's finding that Juror No. 17 was "willing and able to eliminate the influence of any scruples and render a verdict according to the evidence." **Banks**, **supra** at 341; (**see also** N.T. Trial, 10/22/13, at 63-64). Therefore, the court did not palpably abuse its discretion when it denied Appellant's motion for cause. **See Banks**, **supra** at 341. Appellant's second issue does not merit relief.[3]

_____

[3] Moreover, we are not legally persuaded by Appellant's reliance on **Commonwealth v. Ingber**, 531 A.2d 1101 (Pa. 1987), for the proposition that all jurors who are predisposed to believe police officers must be dismissed for cause when the defense has used all of its peremptory strikes. (**See** Appellant's Brief, at 14). In fact, the Court in **Ingber** stated that such a juror, who was related to a police officer and predisposed to credit the testimony of a police officer over a civilian, should be struck where she was not "questioned as to whether she would be able to put aside her feelings and evaluate the evidence in accordance with the court's instructions." **Ingber**, **supra** at 1103-04. Because the trial court did engage in such a line of inquiry with Juror No. 17, **Ingber** is not legally persuasive.

Appellant's reliance on **Commonwealth v. Futch**, 366 A.2d 246 (Pa. 1976), is equally unpersuasive. In **Futch**, the Pennsylvania Supreme Court found that the trial court erred when it precluded counsel from asking, during *voir dire*, whether a prospective juror was more likely to believe the testimony of prison guards and disbelieve that of inmates based solely on
*(Footnote Continued Next Page)*

In Appellant's third issue, he claims that "[t]he trial court erred in excluding [his] entire defense, which consisted of a rental car manager, as well as a frequent rental car customer, both of whom would have testified that objects are frequently left in rental cars and are not discovered by the rental company's cleaning crew."  (Appellant's Brief, at 16).  We disagree.

Our standard of review of this issue is well-settled:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion.  In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence.  Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact.  Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*(Footnote Continued)* —————————

their status, *see Futch*, *supra* at 431-32.  Here, there is no allegation that the trial court precluded any such questions.  Therefore, this case is not legally persuasive.

We also find the cases relied on by Appellant, *Commonwealth v. Johnson*, 445 A.2d 509 (Pa. Super. 1982), and *Commonwealth v. Perry*, 657 A.2d 989, 990-91 (Pa. Super. 1995), to be distinguishable on their underlying facts.  (*See* Appellant's Brief, at 14-15).  *Johnson* involved a prospective juror in a robbery and assault case whose daughter had similarly been robbed and raped, *see Johnson*, *supra* at 512, and the prospective juror in *Perry* was the best friend of the arresting officer in the case.  *See Perry*, *supra* at 990-91.  Because neither of these situations applies here, we do not find Appellant's reliance on them to be legally persuasive.

- 14 -

An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant.

*Commonwealth v. Antidormi*, 84 A.3d 736, 749-50 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (citations and quotation marks omitted). Finally, "[a] defendant has a fundamental right to present evidence, so long as the evidence is relevant and not subject to exclusion under our Rules of Evidence. Evidence is relevant if it tends to prove or disprove some material fact, or tends to make a fact at issue more or less probable." *Commonwealth v. Patterson*, 91 A.3d 55, 71 (Pa. Super. 2014) (citations omitted).

Here, Appellant made an offer of proof as to his two proposed witnesses, Mr. McMurray and Mr. King, who were Appellant's ex-college roommates. (*See* N.T. Trial, 10/23/13, at 99-100). Mr. McMurray previously worked at Enterprise Rent-a-Car, a different rental car company than the one involved in this case, and would have testified that "it was not uncommon for people to leave all kinds of things in cars[.]" (*Id.* at 100; *see id.* at 103). Mr. King would have testified that "he left a firearm in a rental car and that the car was actually re-rented and then the gun was subsequently returned to him." (*Id.* at 100). The Commonwealth objected to these witnesses on the basis that their proposed testimony was

speculative and irrelevant. (**See id.** at 101). The Court sustained the objection because the witnesses could not testify about "anything probative in [Appellant's] case." (**Id.** at 105; **see id.** at 103).

We agree with the decision of the court. Although Appellant's proposed witnesses could have testified about their own personal experiences with a rental car and a rental car company, that testimony was irrelevant to the consideration of what happened under the specific circumstances of this case. **See Patterson**, **supra** at 71.

Therefore, based on our independent review of the evidence in this matter, we conclude that the trial court properly found that the proposed evidence was irrelevant where it did not "tend[] to prove or disprove some material fact, or tend[] to make a fact at issue more or less probable." **Patterson**, **supra** at 71 (citation omitted). Applying our standard of review, we conclude that the court neither misapplied the law nor exercised "judgment that [was] manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality[.]" **Antidormi**, **supra** at 749-50. Appellant's third issue does not merit relief. **See id.** at 749.

Judgment of sentence affirmed.

Gantman, P.J., joins the Memorandum.

Bender, P.J.E., concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/22/2014</u>