656 A.2d 1326

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael RAINEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1994.

Decided March 24, 1995.

Mitchell Scott Strutin, for M. Rainey.

Catherine Marshall, Ronald Eisenberg, Hugh J. Burns, Jr., for Com.

Robert A. Graci, for Atty. General's Office.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

MONTEMURO, Justice.

On December 27, 1991, a jury found appellant, Michael Rainey, guilty of murder of the first degree [1], robbery [2], and related offenses. Three days later the jury imposed a sentence of death following a sentencing hearing held pursuant to 42 Pa.C.S. § 9711. After denying appellant's post-verdict motions, the trial court formally imposed a sentence of death as well as a consecutive sentence of ten to twenty years imprisonment for appellant's robbery conviction. This direct appeal automatically followed. 42 Pa.C.S. § 9711(h)(1).

Appellant's convictions stem from the murder of seventy-four year old Carroll Fleming, which occurred on December 7, 1991. On that date, appellant and two accomplices, co-defendant George Williams, age 20, and Alvin "Eyeball" Morgan, age 14, concocted a scheme to rob Fleming who lived with his son Francis two blocks away at 5522 Sprague Street in Philadelphia. Appellant armed himself with a sawed-off 20–gauge pump action shotgun, and stated that he would "shoot [Fleming] if he had to." Appellant and his coconspirators then proceeded to Fleming's home.

While en route, the three men encountered a friend, Kevin Lewis. Williams convinced Lewis that he was en route to collect a debt, and Lewis offered him his gun, an inoperative .25 automatic, which Lewis said could be used "as a threat."

Upon arrival at the victim's home, Morgan acted as a lookout while appellant and Williams proceeded onto the porch

1. 18 Pa.C.S. § 2502(a).
2. 18 Pa.C.S. § 3701.

of the Fleming residence. Appellant loaded his shotgun with a yellow shell containing a single slug, and knocked on the door. Receiving no immediate answer, appellant kicked the door, damaging it. The elderly Mr. Fleming appeared, came onto the porch confronting the intruders, and turned toward Williams. Williams, cursing, pointed his handgun at Fleming and repeatedly pulled the trigger, but the gun merely made a clicking sound. Appellant, who had retreated off the porch, then stepped out of the shadows, placed the muzzle of his shotgun against Fleming's back and fired.

All three conspirators were subsequently arrested and charged with the murder of Carroll Fleming. Appellant and Williams were tried together by a jury before the Honorable John J. Poserina on charges of murder, criminal conspiracy, robbery, possession of an instrument of crime, and carrying firearms on public streets. The evidence introduced by the Commonwealth during these proceedings included the eyewitness testimony of Kevin Lewis and Alvin Morgan, who had already pleaded guilty under a plea agreement.[3] In addition, the Commonwealth introduced Williams' redacted confession. As previously noted, appellant was found guilty of murder in the first degree and related offenses, and the case proceeded to the penalty phase.

During the penalty phase, the Commonwealth used the evidence introduced at trial to establish the existence of one aggravating circumstance, namely, that the murder had been committed during the perpetration of another felony.[4] The Commonwealth also stipulated that appellant was 18 years old at the time of the murder, and had no significant history of prior criminal convictions. The jury found that the aggravating circumstance introduced by the Commonwealth out-

3. In exchange for Morgan's testimony, the Commonwealth dropped the charges of first and second degree murder pending against Morgan, and allowed him to plead guilty to charges of third degree murder, robbery, and conspiracy. Morgan had not yet been sentenced on these charges when he testified at trial.

4. 42 Pa.C.S. § 9711(d)(6): "The defendant committed a killing while in perpetration of a felony."

weighed these mitigating factors, and imposed a sentence of death.

Following the sentencing hearing, appellant's trial counsel filed post-trial motions and was permitted to withdraw. Appellant's present counsel then filed supplemental post-trial motions alleging, inter alia, trial counsel's ineffectiveness. A hearing on these allegations was held on September 28, 1993, at which the testimony of appellant's trial counsel was presented. On December 1, 1993, the trial court denied appellant's post-trial motions and formally imposed a sentence of death as well as a consecutive term of imprisonment of ten to twenty years for appellant's robbery conviction. Appellant brings the present appeal, raising six allegations of ineffective assistance of counsel, and two additional claims of error which he asserts entitle him to a new trial. Having reviewed these claims, we affirm.

In bringing this appeal, appellant does not challenge the sufficiency of the evidence to sustain his convictions. Nevertheless, we are required to review the record and test the sufficiency of the evidence for murder. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *reh. denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452. It is well established that the test for determining the sufficiency of the evidence is "whether, viewing all of the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict winner, the trier of fact could have found that the defendant's guilt is established beyond a reasonable doubt." *Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833 (1985); *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). A criminal homicide constitutes murder in the first degree when it is committed by an intentional killing. 18 Pa.C.S. § 2502(a). At trial, the Commonwealth introduced eyewitness testimony relating the aforementioned events. This testimony, when viewed in a light most favorable to the Commonwealth, was clearly sufficient to sustain appellant's conviction for first degree murder. Thus, we turn to the issues raised by appellant.

### Ineffectiveness of Counsel

■ Appellant raises six allegations of ineffective assistance of counsel which he argues entitle him to a new trial. The three-prong test under which these allegations are to be reviewed is well settled and was recently articulated by this Court in *Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226 (1994). First, a defendant must show his claim to be of arguable merit. In the event this threshold requirement is satisfied, the defendant must next establish that defense counsel had no reasonable basis for undertaking or failing to undertake the act or omission in question. Finally, the defendant must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. In other words, that the defendant must have suffered actual prejudice from the act or omission. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *See also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Appellant first claims that counsel was ineffective for failing to argue in his summation for an acquittal based upon character evidence presented at trial, and for failing to request a jury instruction concerning character testimony. At trial, appellant's sister, Angelique, and two neighbors; Patricia and Rufus Weary were presented as character witnesses.

This contention, however, ignores the fact that during the September 28, 1993, hearing on post-trial motions, appellant's trial counsel testified that he had not focused on character evidence in his summation, and had not requested a jury instruction concerning character testimony because throughout the trial, he had conceded appellant's involvement in the Fleming homicide and instead argued that the facts of the case established no more than murder in the second degree. In light of this strategy, trial counsel concluded that it would have been unproductive to ask the jury to consider the good character of an individual who had admitted participating in an attempted robbery which resulted in the death of the victim. This testimony clearly establishes that trial counsel

possessed a reasonable basis for his actions. Thus, appellant's claim fails the second prong of the test articulated in *Douglas, supra,* 537 Pa. 588, 645 A.2d 226.

Further in light of the weakness of the character testimony presented by appellant, we are unable to conclude that appellant was in any way prejudiced by his counsel's failure to focus on it. At the hearing on post-trial motions, appellant's trial counsel testified that the character witnesses had been called at his client's insistence and against his advice. Trial counsel further stated that his fears had proved to be well-founded since the half-hearted testimony provided by these witnesses could at best be characterized as weak, and had not made a particularly positive impression on the jury. (Notes of Testimony, 9/28/93 at 10). Angelique Rainey merely testified that appellant had a good reputation as a result of his work "around the house" (Notes of Testimony (N.T. 12/26/91 at 56). Patricia and Rufus Weary, meanwhile, did not even appear in court until after appellant and his co-defendant had rested, and the co-defendant's counsel had finished his closing argument. Appellant was then permitted to reopen his case and call these witnesses. Patricia Weary characterized appellant's reputation in the community as "well good" and offered no further elaboration. Rufus Weary, in turn, stated that appellant's reputation had been, "for the years we was hanging together, good."

In light of the overwhelming evidence introduced by the Commonwealth, the outcome of appellant's trial would not have been different if trial counsel had mentioned this feeble character evidence. Thus, appellant's claim does not provide a basis for relief because it fails not only the second, but also the third prong of the test for ineffective assistance of counsel.

■ Appellant's second and third allegations of ineffective assistance contend that trial counsel was ineffective for failing to obtain a mistrial after appellant's sixth amendment right to confrontation was allegedly violated under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (during joint trial, admission of nontestifying codefendant's

confession naming the defendant as a participant in the crime constitutes a violation of the defendant's right to confrontation).

In bringing this claim, appellant refers to two incidents concerning the redacted statement of his co-defendant, George Williams, in which appellant was referred to as "X".

The first of these incidents occurred during the reading of the redacted statement by Detective Joseph Walsh, when the following exchange occurred:

Question: "Have you had any contact with 'X' since the murder?"

Answer: "Yeah, about three days after the murder, I saw 'X' at his house, and I told him to turn himself in, but he just said not to say anything. I even told his mother, too. I told her that 'X' had shot somebody. She wouldn't open the door for me. She just looked out the window."

Question: "Was there anyone with you when you had this conversation with 'X'?"

Answer: "My brother-in-law, his name is Mike Williams, black male, 23. He lives in West Philly around that movie, the Capitol."

In parenthesis Detective Duffy typed 52nd and Girard. "I can get his phone number from my grandmother."

Question: "Did you see Mike any other time since the murder?"

Mr. O'Donnell: Objection, your Honor.

Question: Detective, review that. You ma[y] have read a type [sic].

Answer: Excuse me.

"Did you see 'X' any other time since the murder?"

(N.T., 12/23/91, at 193–194).

The second incident complained of by appellant occurred during the prosecution's closing argument when the following reference was made to Williams's statement:

Two things the statement by George Williams consider this when you consider the evidence against George Williams. George Williams told the Detective Walsh and Duffy and then Detective Piree that they said "Let's go stick somebody up" and then X went in his house and young boy did too [;] that left me and Eyeball outside [;] then "X" came out and he had changed his coat. When he came out he was wearing a long black leather coat corroborative of what Alvin Morgan testified to. I saw the rifle he had it like down his pants leg.

(N.T. 12/26/91. Vol. A, 63).

 Appellant's allegations of ineffectiveness concerning these incidents are somewhat confusing because trial counsel raised a timely objection, and requested a mistrial on each occasion. Trial counsel is not ineffective because the trial court refused to accept his arguments.[5] Thus, appellant's claims regarding these comments are without arguable merit. Trial counsel's decision to refuse the trial court's offer to issue a cautionary instruction following Detective Walsh's testimony did not constitute ineffective assistance, because counsel clearly acted for strategic reasons, namely, to avoid emphasizing the remark to the jury.

 Appellant also contends that trial counsel was ineffective for failing to object to the trial court's jury instruction

5. Nor was it error for the trial court to deny these motions. Detective Walsh's remark was de minimis and was immediately cured by the prosecutor and later by the trial court's instructions. In addition, due to the context of the statement, it is entirely likely that the jury may have thought that Detective Walsh was referring to Mike Williams rather than appellant. Finally, there already existed *overwhelming* evidence identifying appellant as the victim's killer. Thus, Detective Walsh's remark was harmless.

The trial court was similarly correct in denying the motion for mistrial made by appellant after the prosecutions remarks during closing argument. These remarks did not facially implicate appellant, but rather implicated appellant through inferences raised from the testimony of Alvin Morgan. The U.S. Supreme Court has previously held that such inferential incrimination from a redacted statement does not constitute a violation of a defendant's right to confrontation. *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Further, any prejudice suffered by appellant from this inference was cured by the trial court's instructions following closing arguments.

regarding the use of redacted statements. The charge was as follows:

> You have also heard the statement redacted that means you heard in the statement the word X used repeatedly. Okay, why? The law of Pennsylvania in accordance with U.S. Supreme Court decision are [sic] that if a statement is made by a person, that statement can only come in against that person or for that person because he's permitted to testify against himself and nobody else. Under the circumstances here, I'm going to read to you the general principals [sic] of law. And if you decide that Mr. Williams did make a statement that was voluntary and freely given to the police and if you believe that that's what you heard from the witness stand, then you cannot use that against anybody at trial except Mr. Williams.
>
> . . . . .
>
> A statement made before trial may be considered as evidence only against the defendant who made the statement. Thus, you may consider the statement against Mr. Williams if you believe he made the statement voluntarily. You must not consider the statement as evidence against any other defendant. You must not use the statement in any way against any other person.

(N.T. 12/27/91, 43–45). Appellant now alleges that this instruction was improper because it informed the jury that an individual's name had been replaced with the letter "X." This claim is clearly without arguable merit for the trial court's instructions were in accordance with the law.

Appellant asserts in his fifth allegation that trial counsel was ineffective for failing to request a jury instruction concerning the potential bias of Commonwealth witness Kevin Lewis due to his juvenile delinquency status. Prior to testifying, Lewis had given three statements to the police. In the first two, Lewis identified appellant and Williams as the perpetrators, but omitted the fact that he had given the co-defendant a gun. At the time of his second statement, Lewis had been incarcerated following an adjudication of delinquency

on an unrelated matter. Lewis subsequently completed his detention and was released on April 5, 1991. He then went to college. Lewis was interviewed a third time on December 11, 1991. He again identified appellant and Williams as the robbers, but for the first time he also admitted giving Williams a handgun.

Appellant now contends that because Lewis was incarcerated at the time of his second statement he was entitled to a charge regarding Lewis's potential bias. In support of this claim, appellant cites *Commonwealth v. Borders*, 522 Pa. 161, 560 A.2d 758 (1989). In *Borders*, we held that a defendant is entitled to impeach a witness through the introduction of any juvenile charges pending against the witness. This argument, however, completely ignores the fact that at the time of trial and at the time of his third statement, Lewis had already served his juvenile detention, and was no longer subject to bias from this perspective. Thus, appellant's claim is without arguable merit. In fact, the Commonwealth correctly notes that Lewis's statement was particularly reliable because he had admitted giving a handgun to Williams; therefore, exposing himself to criminal prosecution at a time when he had no juvenile (or other) cases pending.

Appellant's final claim of poor representation alleges that trial counsel was ineffective for failing to request a "mercy" instruction. This claim is meritless. The Pennsylvania death penalty statute specifically states that a jury's decision not to impose a sentence of death must be based solely on the weighing of aggravating and mitigating circumstances as provided in the statute. Recently, in *Commonwealth v. Young*, 536 Pa. 57, 637 A.2d 1313 (1993), we noted that any instruction permitting a jury to forgo the weighing process and avoid imposition of a death sentence by exercising unbridled discretion to grant mercy or leniency would be clearly erroneous. We stated,

> The sentencing court did not err in refusing the requested instruction [that the jury could impose life for any reason whatsoever], since such an instruction would inject arbitrariness and capriciousness into the capital sentencing process.

> In the absence of a standard to guide the jury's expression of mercy and leniency, there would be no guarantee of consistency in sentencing across cases. Appellant was allowed to present and argue any evidence which was relevant and admissible in an attempt to convince the jury that the death sentence should not be imposed in his case. That is all that is constitutionally required.

536 Pa. at 76, 637 A.2d at 1322 (1993).

Despite *Young*, appellant argues that under our holding in *Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1 (1992), he is entitled to an instruction stating that while the jury must follow the law as it relates to aggravating and mitigating circumstances, it nevertheless maintains the power to show a defendant mercy and impose a sentence of life imprisonment. Appellant's reliance on *Zook* for this proposition is misplaced. In *Zook*, we dealt with a defendant's challenge to the following instruction during the penalty phase,

> In making the decision whether or not to impose the death penalty upon Robert Zook, it is entirely proper for you to consider sympathy or mercy as a reason to impose a life sentence.
>
> However, this sympathy or mercy which you may wish to show Robert Zook must be founded upon any one or more—must be founded upon—founded upon evidence any one or more you find to be a mitigation circumstance.
>
> That's worth repeating. The sympathy or mercy which you may wish to show Robert Zook must be founded upon evidence any one or more of you find to be a mitigating circumstance.

*Zook*, 532 Pa. at 103, 615 A.2d at 13.

Contrary to appellant's assertions we did not uphold this instruction on the grounds that it gave a jury unbridled discretion to impose a life sentence, but rather, because it clearly stated that an exercise of the jury's mercy or sympathy had to be based on evidence of mitigating circumstances. Here the trial court clearly instructed the jury on the only relevant aggravating circumstance as well as all relevant

mitigating circumstances including the "catchall" provision of 42 Pa.C.S. § 9711(e)(8). The jury was then properly instructed that its verdict was to be reached by weighing these circumstances against one another. Such an instruction was correct, and nothing further was required. Indeed, for the trial court to have instructed the jury that it could reach its decision outside this framework would have been error. Thus, trial counsel cannot be deemed ineffective for failing to assert such a meritless claim. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1980).

## Prosecutorial Misconduct

■ Appellant next alleges that he is entitled to relief on the basis of comments made by the prosecution during its closings in both the guilt and penalty phases of appellant's trial. The standard under which claims of prosecutorial misconduct are to be reviewed is well established, and was set forth by this court in *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367, *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991), where we stated,

> The primary guide in assessing a claim of error of this nature is to determine, whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict. *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974); *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979). In making such a judgment, we must not lose sight of the fact that the trial is an adversary proceeding, Code of Professional Responsibility, Canon 7, E.C. 7-19-7-39, and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury. *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975).

*Commonwealth v. Chester*, 526 Pa. at 599, 587 A.2d at 1377, *citing Commonwealth v. Zettlemoyer*, 500 Pa. 16, 53–54, 454 A.2d 937, 956–57 (1982).

Appellant first argues that the Commonwealth committed misconduct when the prosecutor branded appellant and his co-defendant as "criminals" during his closing argument in the guilt phase. In addition, appellant contends that the prosecutor again committed misconduct in the penalty phase when he argued that appellant had "cold-bloodedly murdered" Mr. Fleming, and that appellant did not allow his victim due process.

Appellant's first assertion regarding the prosecution's remarks in the guilt phase is meritless. At trial, the prosecution introduced evidence establishing that appellant had masterminded the conspiracy to rob the victim, had lured the elderly victim onto the porch, and had then executed him at point-blank range. These acts are clearly crimes; to describe an individual capable of committing them as a "criminal" was a fair comment on the evidence.

Moreover, both claims of prosecutorial misconduct ignore the fact that we have found far more graphic comments to be appropriate on several prior occasions. *E.g., Commonwealth v. Sam,* 535 Pa. 350, 635 A.2d 603 (1993) (appropriate to argue that murder was "chilling" and that appellant "blew that little girl's brains out" and "wiped out three generations of people"); *Commonwealth v. Marshall,* 534 Pa. 488, 633 A.2d 1100 (1993) ("close the eyes of the dead"); *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367 (1991) (argument that victim was "carved up like a cheap piece of tenderloin," and that [defendants] had "ice water running through their veins"). In light of these precedents, neither of appellant's claims provide a basis for relief.

### Review of Proportionality

Having reviewed the allegations of error raised by appellant, we are next required by 42 Pa.C.S. § 9711(h)(3) to review the sufficiency of the evidence supporting the jury's finding of one aggravating circumstance, and to determine whether the sentence of death imposed was the product of passion, prejudice or any other arbitrary factor, was excessive or disproportionate to the penalty imposed in similar cases.

After reviewing the record, we find that the jury's conclusion that the murder of Carroll Fleming was committed in the perpetration of a felony was clearly supported by the evidence. In addition, we find no basis on which to conclude that the death sentence in this case was the product of passion, prejudice or any other arbitrary factor, or that such a sentence is excessive or disproportionate to the sentences imposed in similar cases. *See Commonwealth v. Frey,* 504 Pa. 428, 443, 475 A.2d 700, 707–708 (1984).

For the foregoing reasons, the judgment of sentence is affirmed. The prothonotary of the Supreme Court is directed to transmit a full and complete record of the trial, sentencing hearing, imposition of sentence and review by this court to the Governor. 42 Pa.C.S. § 9711(i).

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, J., is sitting by designation.