J-A03026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THEODORE COSIOUSE ARNOLD, | : | |
| | : | |
| Appellant | : | No. 3660 EDA 2016 |

Appeal from the Judgment of Sentence August 22, 2016
In the Court of Common Pleas of Montgomery County Criminal Division at
No(s):  CP-46-CR-0005829-2014

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED FEBRUARY 15, 2018**

Theodore Cosiouse Arnold appeals from the judgment of sentence entered following his jury trial conviction for aggravated assault, possessing instruments of crime ("PIC"), simple assault, and two counts of recklessly endangering another person ("REAP").[1] Arnold contends the trial court erred when it excluded evidence at trial. We affirm.

On February 2, 2014, Arnold's wife, Diana Arnold, ("Wife") went to the Montgomery Elks Social Club ("Elks Club") in Pottstown, Pennsylvania for drinks. N.T., 3/15/16, at 250-51. When she left the Elks Club, she noticed Arnold in his vehicle across the street. *Id.* at 262. Arnold threatened her and told her to get in the vehicle. *Id.* Wife refused, and Arnold sped away. *Id.*

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 907(a), 2701(a)(1), and 2705, respectively.

* Retired Senior Judge assigned to the Superior Court.

Arnold returned and saw Wife speaking with Brandon Germany ("Victim"). Arnold yelled to Victim something to the effect of, "'Roll out, she got a husband[,]' or 'That's my girl' . . . ." N.T., 3/14/6, at 129. Victim turned to walk away and Arnold began to shoot at Victim and Wife, *id.* at 130, striking Victim in the upper right leg and upper left arm. Arnold fled and evaded law enforcement for almost five months. N.T., 3/15/16, at 321. Wife gave a statement to police on the night of the incident identifying Arnold as the assailant.

Before trial, on March 4, 2016, the Commonwealth filed a motion *in limine* to preclude evidence that Victim was on parole from an aggravated-assault conviction both at the time of the incident and at the time of trial. N.T., 3/14/16, at 76. Arnold argued Victim's parole status was admissible because it provided a motive to lie. Arnold contended there was inconsistent testimony, including inconsistencies as to whether Victim entered the bar, and pointed out that if he had entered the bar he would have violated his parole. *Id.* at 79-80. He further argued the testimony would support his theory that someone else shot Victim. *Id.* at 80. The trial court granted the Commonwealth's motion and precluded the evidence. *Id.* at 81.

At Arnold's jury trial, despite having identified Arnold as the assailant in her statement to police, Wife testified that she was intoxicated and angry with Arnold when she spoke with the police on the night of the incident. N.T., 3/15/16, 282-84. When the prosecution confronted her with her statement to police in which she identified Arnold as the shooter, she stated

she did not remember saying that Arnold shot at her and Victim. *Id.* at 262-63. On cross-examination, Arnold attempted to cross-examine Wife with letters she wrote to Arnold after the incident, and the prosecution objected and moved at sidebar to exclude the letters. *Id.* at 284-85. Wife sent letters to Arnold between the time of the incident and Arnold's trial "essentially entailing [sic] her regret for implicating [him], and blaming her actions on her drunkenness and anger toward him." Trial Court Opinion, 7/6/17, at 15 ("1925(a) Op.") (footnotes and citations omitted).

A discussion ensued out of the presence of the jury during which defense counsel agreed not to cross-examine Wife with the letters unless she first gave testimony inconsistent with her statements in the letters:

> THE COURT: . . . So I am asking [defense counsel]. I understand your reasoning for wanting it, because it corroborates what she is saying here. But like I said to you at sidebar, if it was the reverse, if it was an identifying witness in court who made an identification to police, was going to be consistent in court, and wrote a letter to a defendant in prison saying, "I identified you. I know it was you. You bastard. You should admit it" or anything similar – you know, just "I identified you," that wouldn't come in, because it's consistent with the testimony in court. Why should this letter come in, as it is consistent with her testimony in court?
>
> [DEFENSE COUNSEL]: Well, her testimony in court, as I recall it, is she looked at the document and said, "I don't agree with the answer. I didn't say these things. The only thing I remember saying was about Theodore the first time, that he came and he left."
>
> THE COURT: Well, she didn't say, "I don't remember." She said, "Those aren't the words I would use, [d]oesn't sound like me," and that she did not agree to saying it.

[DEFENSE COUNSEL]: Right. In reference to at least some of the words in the statement.

[THE COURT]: Right.

[DEFENSE COUNSEL]: Not all of them. Now, the portions that I was intending to ask her about would be – there are two letters. One is dated November 26, 2014. "I was very upset to know you had a new spouse and have learned to deal with it. But in court, being announced as the ex-spouse, burned a hole in me." Then later she says. "I was drunk that night and you know me and my drinking, I'll say anything." So this would be a reason – this would be a reason why she says that she doesn't remember.

[The prosecutor], I anticipate, has every intention of calling Detective Leahan and explaining this statement and then introducing it as substantive evidence for the jury.

. . .

THE COURT: Okay. But why do we need – she's already admitted she was drunk. She already admitted she had a lot to drink. She gave us her descriptive drink names. How is the statement –

[DEFENSE COUNSEL]: I'll tell you –

THE COURT: It doesn't impeach it.

[DEFENSE COUNSEL]: -- what I'll do. I won't confront her with the letter. I'll just finish my cross-examination about when she was talking that night, she was drunk; are you the kind of drunk that will say anything? I'll just ask her that.

**THE COURT: And if she denies that, then this could be possible to impeach her with it.**

**[DEFENSE COUNSEL]: Okay.**

**THE COURT: If she's denying the information or it could, you know, contradict any information, then it's a possibility to impeach her with that.**

- 4 -

**[DEFENSE COUNSEL]: That's fine. That's what I'll do.**

N.T., 3/15/16, at 287-92 (emphasis added).

The jury convicted Arnold of the above-referenced offenses, and the trial court subsequently sentenced Arnold to four to eight years' imprisonment for aggravated-assault and one to two years' imprisonment for each REAP conviction. The trial court ordered the sentences to run consecutively to each other, for an aggregate sentence of six to 12 years in prison.[2] After the court denied his post-sentence motions, Arnold filed a timely notice of appeal.[3]

Arnold raises the following issues on appeal:

> 1. Did the trial court erroneously grant the prosecutor's motion *in limine* to exclude evidence that [Victim] was on state parole for aggravated assault, where the witness'[s] status as a parolee was probative of his motive to testify falsely and where [Victim's] prior assault conviction was relevant to the question of whether [Arnold] was legitimately in fear of complainant?
>
> 2. Did the trial court erroneously grant the prosecutor's motion *in limine* to exclude letters written by [Wife] after the incident wherein she acknowledged that she falsely accused [Arnold] at a time when she was angry and drunk, where those letters were proper rebuttal to the prosecutor's claim that [Wife] had, for the purposes of trial, fabricated her testimony that she lied about [Arnold] to the police while intoxicated?

---

[2] Arnold received no further penalty for the PIC and simple-assault convictions.

[3] On November 10, 2016, the trial court re-instated Arnold's direct appeal rights *nunc pro tunc*.

Arnold's Br. at 4 (italics added).

We review the trial court's decision to admit or preclude evidence for an abuse of discretion. **Commonwealth v. Cox**, 115 A.3d 333, 336 (Pa.Super. 2015) (*en banc*). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." **Id.** (quoting **Commonwealth v. Collins**, 70 A.3d 1245, 1251 (Pa.Super. 2013)). If we determine that the trial court erred in admitting or precluding the evidence, we must determine whether the error was harmless. **Commonwealth v. Robinson**, 721 A.2d 344, 350 (Pa. 1998). An error is harmless where the appellate court concludes beyond a reasonable doubt that: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. **Id.**

Arnold first argues that the trial court erred when it granted the Commonwealth's motion *in limine* to exclude evidence that Victim was on state parole for aggravated assault. Arnold claims that Victim's status as a parolee would have assisted Arnold's claim that Victim was the first aggressor. Arnold's Br. at 15. He also argues that Victim's parole status was admissible to show his motive to provide testimony favorable to the

prosecution.

Arnold is not entitled to relief on this issue. He waived any argument that Victim's parole status was relevant to show Victim was the first aggressor because he failed to raise the argument before the trial court. Instead, in his arguments below, he contended only that the evidence was admissible to demonstrate Victim's alleged motive to lie and to establish someone else was the attacker. **See Commonwealth v. Shank**, 883 A.2d 658, 672 (Pa.Super. 2005) (citing **Commonwealth v. Witherspoon**, 392 A.2d 1313, 1314 n.4 (Pa. 1978) ("Where a specific objection is interposed, other possible grounds for the objection are waived")); **Cf.** Pa.R.E. 103.

Although he preserved his argument that Victim's parole status was admissible to demonstrate a motive to provide false testimony, his argument is meritless. Arnold relies on **Davis v. Alaska**, 415 U.S. 308 (1974), and subsequent cases to support his argument. In **Davis**, a witness who was on probation told police that he had seen the defendant near stolen property found near the witness's house. **Id.** at 309-10. The defendant sought to use the witness's probationary status to show his possible bias and prejudice. The trial court refused to admit the evidence, but the U.S. Supreme Court concluded that doing so violated the defendant's Sixth Amendment right to effective cross-examination. The Court explained that the witness's status as a probationer "was admissible to afford a basis for an inference of undue pressure because of [the witness's] vulnerable status as a probationer, as well as of [the witness's] possible concern that he might be a suspect in the

investigation." *Id.* at 317-18 (footnote and citations omitted).

However, following *Davis*, the Pennsylvania Supreme Court refused to require the admission of evidence that a witness in a criminal trial was on parole where the defendant failed to make an adequate offer of proof of probative value. *Commonwealth v. Walker*, 740 A.2d 180, 185 (Pa. 1999). There, a witness testified at trial that he was the victim of a robbery, and the defense sought to introduce evidence that the witness, who ran a speakeasy out of his home, was on parole when he first spoke to police. *Id.* at 181. The Court concluded that, under the facts of the case, the defense had made an insufficient proffer to establish the evidence's probative value. The Court reasoned that the witness: received no advantage by reporting the robbery; would not have reported the robbery out of fear that the other party might jeopardize his parole; and would have refrained from reporting the robbery if he had been concerned about the police discovering that he ran an illegal speakeasy. *Id.* at 185. Further, the Court noted that the defendant was able to cross-examine the witness about the speakeasy and "argue . . . that the desire to get the case over with motivated [him] to cooperate with police and identify [the defendant]." *Id.*

Here, the trial court granted the Commonwealth's motion to preclude the evidence, because, in context, Arnold failed to make a sufficient offer of proof to demonstrate that Victim's parole status was relevant, overcome the general rule that prior bad acts are inadmissible, or show that the probative value of the evidence overrode the risk of unfair prejudice. The trial court

explained:

> Victim could not and did not identify [Arnold] as the assailant; Victim simply testified as to what occurred on February 2, 2014, and his resulting injuries. Defense counsel, in his argument on the Commonwealth's Motion, did not contend Victim was the first aggressor (nor was there evidence to support such a theory), but instead stated the purpose of introducing Victim's parole status was to test the credibility of Victim's statement that he did not enter the Elks Lodge bar at any point, which could have potentially been a violation of his parole. In fact, the main defense theory put forth by defense counsel was that [Arnold] was not the assailant and that it was rather some unknown third party.

1925(a) Op. at 8 (citations omitted). The trial court further noted that Arnold could address his credibility concerns while cross-examining Victim without introducing Victim's parole status. ***Id.***

We conclude that the record supports the trial court's findings and that its decision to preclude evidence that Victim was on parole was not an abuse of discretion. ***See Walker***, 740 A.2d at 295-96. Furthermore, even if the trial court had erred in precluding evidence of Victim's parole status, the error was harmless. As the trial court noted, Victim did not identify Arnold, but rather merely explained "the circumstances of the shooting and his injuries." 1925(a) Op. at 12; ***see Robinson***, 721 A.2d at 350 (noting error is harmless where error did not prejudice defendant or prejudice was *de minimis*).

Arnold next argues that the trial court erred when it excluded the letters Wife sent to Arnold. Arnold argues the letters were admissible under

Pennsylvania Rule of Evidence 613[4] as a prior consistent statement. However, as established by the discussion quoted above, N.T., 3/15/16, at 287-92, Arnold did not present this argument to the trial court. He therefore waived it. **See Witherspoon**, 392 A.2d at 1314 n.4; **Shank**, 883 A.2d at 672. Further, defense counsel agreed with the trial court's treatment of the issue at trial. He will not now be heard to complain. **Commonwealth v. Freeman**, 827 A.2d 385, 406 (Pa. 2003) (refusing to review issue where "the subject of this objection was a matter that was specifically discussed by the parties with the trial judge, resulting in an agreement on how to respond.").

Moreover, any error in admitting the letters was harmless. As the trial court noted, Arnold's counsel "was able to question [Wife] on cross-

---

[4] Pennsylvania Rule of Evidence 613(c) provides:

> **(c) Witness's Prior Consistent Statement to Rehabilitate.** Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

examination regarding her alleged drunkenness at the time of her identification of [Arnold] as the assailant to law enforcement, and how the same might have affected the veracity of her statements to law enforcement." 1925(a) Op. at 18. Arnold is not entitled to relief on his second issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/15/18